# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

SEYLON DUDLEY,

      Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN FOUNDATION,

      Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## **COMPLAINT AND JURY DEMAND**

Plaintiff Seylon Dudley ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, states the following for her Complaint against Defendant Blue Cross Blue Shield of Michigan Foundation ("Defendant"):

1

# INTRODUCTION

1. Plaintiff Seylon Dudley was an Executive Administrative Assistant for Defendant until her termination on January 5, 2022. She was one of approximately 250 employees who submitted religious accommodation requests for exemption from Defendant's COVID-19 vaccine mandate in November 2021 and terminated for not having "sincerely held religious beliefs." Despite the Equal Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance," Defendant did the opposite. Instead of respecting religious beliefs, Defendant conducted short, arbitrary interviews with employees regarding whether they used other vaccines or took over the counter medications. Defendant then ignored the EEOC's warning that employers "should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others" and terminated a majority of employees seeking religious accommodation based on Defendant's subjective standard of religiosity. Defendant did not care that Ms. Dudley was working remotely from home and could not endanger her coworkers. All the while, Defendant did not require customers, vendors, or independent contractors on its premises to be vaccinated.

2. Defendant also violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207(a)(1), when it misclassified Ms. Dudley as "exempt" from overtime pay requirements and woefully underpaid her for the excessive hours she kept at work.  Ms. Dudley's job duties included scheduling appointments, maintaining calendars, editing and proofreading communications, preparing and distributing agendas, providing support for daily functions, arranging travel, assisting with special projects and presentations, monitoring supply inventory, resolving routine inquiries, and answering the telephone. Ms. Dudley did not consistently exercise discretion and judgment, nor did she formulate or implement management policies, have authority to deviate from established policies, or handle any complaints.  Accordingly, Ms. Dudley was entitled to overtime pay.

## PARTIES AND JURISDICTION

3. Plaintiff is an individual residing in Belleville, Michigan.

4. Defendant is a domestic nonprofit corporation with a principal place of business located at 600 East Lafayette Boulevard in Detroit, Michigan.

5. The U.S. District Court for the Eastern District of Michigan has jurisdiction over the claim under the Fair Labor Standards Act of 1938 ("FLSA") pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the claims under the Elliott-Larsen Civil Rights Act ("ELCRA") pursuant to 28 U.S.C. § 1367.

6. This matter is not subject to arbitration.

7. Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff was employed as an Administrative Assistant to Director of Governance and Operations James Kett, and Director of Regulatory Mandates Phyllis Browne from July 12, 2021 until her termination effective January 5, 2022.

### Defendant's Mandatory Vaccine Policy

9. Defendant announced a mandatory COVID-19 vaccine policy for "all employees and contractors, including those working remotely" on or about November 1, 2021.

10. Defendant required employees and contractors to be vaccinated by December 8, 2021.

11. Defendant never required visitors or vendors to be vaccinated.

12. The last day for employees to request accommodations to the vaccine mandate was November 11, 2021.

13. The decision whether to grant or deny religious and medical vaccine accommodations to over 250 applicants was made less than two (2) weeks later, on November 24, 2021.

14. Employees denied accommodation were automatically placed on unpaid leave of absence from December 9, 2021 until January 5, 2022.

4

15. Defendant's accommodation process was arbitrary and woefully inconsistent.

16. Defendant conducted a series of ambush-style interrogations with employees who submitted religious and medical accommodation requests.

17. Defendant's employees were not informed of questions ahead of time.

18. Attorneys for Defendant questioned employees, but employees were not allowed to be represented by legal counsel during questioning.

19. The interviewees were told that the interviews had a maximum time of fifteen (15) minutes in duration.

20. When employees asked questions, they were warned to just "answer the questions" or else they would be denied accommodation.

21. The interviewees were threatened to keep their answers short and to the point because time was "running out" and time was "limited."

22. Defendant told interviewees that it had not reviewed their written accommodation requests.

23. Defendant denied accommodation to interviewees with language barriers and/or difficulty answering questions due to medical conditions.

24. Defendant asked employees the following questions:

    a. Do you feel like the COVID-19 vaccines were rushed?
    b. What do you do when you are in physical pain?
    c. Do you take Aspirin, Sudafed, Tums, or Tylenol?
    d. Do your beliefs prevent you from receiving medical treatments?

   e. Do you have a primary care physician?
   f. Has your doctor ever prescribed medication?
   g. What would you do if your doctor prescribed medication?
   h. What medication have you taken?
   i. Have you always followed this religious belief?
   j. When was the last time you received a vaccination?

25. Employees were told that over-the-counter medications like Tylenol and Tums were developed and manufactured using stem cells.

26. However, the over-the-counter medications referenced by Defendant were developed decades before stem cell research was conducted.

27. Moreover, many of Defendant's employees were objecting to the COVID-19 for religious reasons that had nothing to do with stem cell research.

28. Defendant terminated approximately 250 employees who requested a religious accommodation to the COVID-19 vaccine on January 5, 2022.

29. Defendant incentivized employees to retire early in 2020 in order to reduce staffing costs, but Defendant did not have to eliminate jobs in 2021 because it terminated unvaccinated employees.

30. Defendant touts on job recruiting websites that it requires COVID-19 vaccination with "no exemptions."

31. Employees denied accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

32. Defendant terminated remote employees who remained unvaccinated despite those employees posing no discernible risk to their coworkers.

### Plaintiff's Religious Accommodation Request

33. Plaintiff seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer.

34. Plaintiff had been a remote employee since her initial hiring during the pandemic on July 12, 2021 until her termination on January 5, 2022.

35. Plaintiff received an email from Tricia Snyder, Vice President of Employee and Labor Relations, reminding her to either receive the vaccine by December 8, 2021 or request accommodation by November 11, 2021.

36. Plaintiff requested accommodation on November 5, 2021:

> My name is Seylon Dudley and based on my sincerely held religious beliefs and under the guidance of the scripture from the Holy Bible I assert my rights and respectfully request religious exemption from all requirements of or taking any form of the COVID-19 vaccines as a condition of employment . . . God's Holy Spirit directed me to not take the Covid-19 vaccine in any

7

> way. God's scripture tells me that I must present my body as a living sacrifice holy and acceptable to him. In accordance with my Christian faith, I believe that every life is sacred, and our bodies are temples of the Holy Spirit, therefore I must honor God with my body, as I am made in his image . . . I was hired into Blue Cross Blue Shield as a fully remote employee and continue to work remote today. My team and I have exceeded performance during this time working within this remote model. I am requesting accommodation to stay fully remote.

37. Plaintiff was interviewed approximately two weeks later, on November 22, 202, by Attorney Bruce Henderson.

38. Plaintiff was asked the following questions:

   a. Do you feel like the COVID-19 vaccines were rushed?
   b. What do you do when you are in physical pain?
   c. Do you take Aspirin? Do you take Sudafed?
   d. Do your beliefs prevent you from receiving medical treatments?
   e. Do you have a primary care physician?
   f. Has your doctor ever prescribed medication?
   g. What would you do if your doctor prescribed medication?
   h. What medication have you taken?
   i. Have you always followed this religious belief?
   j. When was the last time you received a vaccination?

39. Plaintiff responded as follows:

   > I'm requesting an accommodation for the COVID-19 vaccine because it goes against my sincerely held beliefs . . . I do not want to defile my body, my body is the temple for the Holy Spirit, and I've been in deep prayer about this and the Holy Spirit has told me not to . . . the COVID-19 vaccine goes against my sincerely held religious beliefs, and I'm not going to defile my body, because the Holy Spirit is inside of me, the temple, this is my temple . . . So, my request today, my request for accommodation today is

>   very simple, it is to stay remote, which I've stayed this whole time, which I hired in this whole time . . .

40. Plaintiff began objecting to the form of the questions that were being asked during the interrogation around the eighth or ninth question:

>   I'm starting to feel, though, so I know the employer is entitled to make a limited inquiry, and they're not supposed to be excessive, unnecessary questions . . . I feel like this is hostile, the environment . . . Well, it's not that I don't want to answer it, but it's that by law they're not supposed to be excessive. And they're not supposed to, it's supposed to be a limited talk. So, I feel like some of these questions are irrelevant, and are excessive.

41. Plaintiff indicated her willingness to "discuss a reasonable solution . . . that is reasonable," meaning a reasonable accommodation. Mr. Henderson replied,

>   That's not the purpose of this phone call, of why we're here. We're here to gather certain information. Frankly, I understand what you're saying, I understand that's what part of your request is, and I understand that you submitted, what you said, but that's not our purpose today. Our purpose today is to ask you a series of questions.

42. Mr. Henderson replied to her comments about a hostile environment and excessive questioning only by mentioning they had a "limited time" and by informing her that there was "another interview scheduled" immediately after her.

43. The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

9

44. No such "bilateral cooperation" occurred during Defendant's interrogation of its employees or otherwise during the process.

45. The United States Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

46. Plaintiff's religious accommodation request was denied only two days after the interrogation and the day before Thanksgiving, on November 24, 2021:

> Your request for an exemption from the Company's policy requiring all employees to obtain a COVID-19 vaccination due to an alleged sincerely held religious belief, practice, or observance is denied. The Company determined that the information you provided, both verbally and in writing, does not meet the criteria for a sincerely held religious belief, practice, or observance and is, therefore, not protected by Title VII of the Civil Rights Act. This is the Company's final determination on this issue.

47. President Daniel J. Loepp announced on or about December 7, 2021: "I want to thank all employees who are or are in the process to become fully vaccinated and encourage any employee who is not vaccinated to consider doing so."

48. President Daniel J. Loepp told Defendant's employees in the weeks prior to the vaccination deadline that he anticipated denying accommodation requests and terminating many employees.

49. Plaintiff received an email on the morning of December 7, 2021, warning her that she would be placed on "unpaid leave effective December 9, 2021."

50. Plaintiff filed a complaint with the Michigan Department of Civil Rights ("MDCR") on the afternoon of December 7, 2021: "I am notifying and requesting assistance regarding unlawful discrimination resulting in being put on unpaid leave and eventually being discharged from my employer."

51. Plaintiff appealed the denial of her request on December 8, 2021:

> This letter is an appeal to the denial of my religious accommodation . . . You (BCBSM) are discriminating against me. BCBSM has altered their employment policies that conflict with my sincerely held religious beliefs and I have filed a formal complaint with the U.S. Equal Employment Opportunity Commission (EEOC) and the Michigan Department of Civil Rights (MDCR). You are required to grant a reasonable accommodation to my sincerely held religious belief . . . An example of a reasonable accommodation would be to remain working remote as already directed from BCBSM which is how I have worked since the beginning of my employment.

52. Plaintiff was an excellent performer of her job duties.

53. Plaintiff received her Employee Performance Review on December 31, 2021, wherein her supervisor, Mr. Kett, stated the following: "I can see that Seylon has a future with the company. She will be very successful . . . Many now come to her for assistance . . . She has already become a valuable member of the team."

54. Plaintiff received a letter from Ms. Snyder on January 4, 2022, stating, "[t]his letter serves as notice that your employment is terminated effective January 5, 2022."

55. Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

56. The U.S. Equal Employment Opportunity Commission ("EEOC")[1] advises employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

57. An individual's testimony about his or her belief "must be given great weight" and is enough to demonstrate a sincerity. *Seeger*, 380 U.S. at 184 (1965).

58. Plaintiff's religious conviction is highlighted by the fact she remained unvaccinated in the face of termination, losing her livelihood in the process.

---

[1] Plaintiff filed with the U.S. Equal Employment Opportunity Commission ("EEOC") on February 12, 2022. Plaintiff will be amending to add claims under Title VII of the Civil Rights Act of 1964 ("Title VII").

12

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

59. The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). The employer bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978).

60. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

61. Defendant is not claiming undue hardship.

62. Defendant cannot allege undue hardship when other employees performing similar job duties were granted medical accommodations to the vaccine.

63. Defendant cannot allege undue hardship because Plaintiff was a remote worker.

### Plaintiff was Deprived Overtime Pay

64. Plaintiff was classified as "exempt" from overtime pay, when her job duties primarily comprised of scheduling appointments, maintaining calendars, editing and proofreading communications, preparing and distributing agendas, providing support for daily functions, arranging travel, assisting with special projects

13

and presentations, monitoring supply inventory, resolving routine inquiries, and answering the telephone.

65. Plaintiff did not consistently exercise discretion and judgment.

66. Plaintiff did not formulate or implement management policies.

67. Plaintiff did not have authority to deviate from established policies.

68. Plaintiff did not handle any complaints or arbitrate disputes.

69. Plaintiff was misclassified as "exempt" from overtime pay in violation of the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 207(a)(1).

70. Plaintiff is owed all unpaid overtime in exact amounts to be determined from July 12, 2021 until her termination effective January 5, 2022.

## COUNT I
## Violation of Elliott-Larsen Civil Rights Act ("ELCRA")
## Religious Discrimination–Failure to Accommodate

71. Plaintiff restates the foregoing paragraphs as set forth herein.

72. An employer shall not discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of the individual's religion. MCL 37.2202(1)(a).

73. Plaintiff can establish a *prima facie* case of religious discrimination by showing that (1) she holds a sincere religious belief that conflicts with an employment requirement; (2) she informed her employer of this belief; and (3) she suffered an adverse employment action for "failing to comply with the conflicting employment requirement." *Tepper v. Potter,* 505 F.3d 508, 514 (6th Cir. 2007).

74. Plaintiff holds a sincere religious belief that conflicts with the vaccine mandate announced on November 1, 2021. Plaintiff informed her employer of this religious belief when she requested accommodation on November 5, 2021.

75. Plaintiff was placed on an unpaid suspension on December 9, 2021 and terminated on January 5, 2022 for failing to comply with the vaccine mandate.

76. Defendant evaded any sort of bilateral cooperation.

77. Plaintiff should have been given the opportunity to continue telework.

78. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of her request for accommodation.

79. Plaintiff has been denied employment and placed in financial distress and she has suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the denial of her request.

80. Plaintiff has been required to employ the services of an attorney.

81. Defendant's actions were intentional and/or reckless.

## COUNT II
### Violation of Elliott-Larsen Civil Rights Act ("ELCRA")
### Religious Discrimination–Retaliation

82. Plaintiff restates the foregoing paragraphs as set forth herein.

83. Two or more persons shall not conspire to, or an individual person shall not on his or her own, retaliate against a person because the person has opposed a violation of the Elliott-Larsen Civil Rights Act ("ELCRA"). MCL 37.2701(a).

84. Plaintiff can establish a *prima facie* case of retaliation by showing (1) that she engaged in a protected activity; (2) that this was known by the employer; (3) that the employer took an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019).

85. Plaintiff engaged in protected activity when she requested a religious accommodation to the vaccine mandate on November 5, 2021 and when she communicated about employment discrimination on November 24, 2021.

86. Defendant retaliated by placing her on unpaid leave of absence on December 9, 2021 and terminating her employment on January 5, 2022.

87. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct.

88. Plaintiff has been denied employment and placed in financial distress and she has suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct.

89. Plaintiff has been required to employ the services of an attorney.

90. Defendant's actions were intentional and/or reckless.

## COUNT III
## Violation of Fair Labor Standards Act of 1938 ("FLSA")

91. Plaintiff restates the foregoing paragraphs as set forth herein.

92. Plaintiff was an "employee" or "individual employed by an employer" under the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 203(e).

93. Defendant was an "enterprise engaged in commerce" during all relevant times under the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 203(s).

94. Plaintiff was employed as an Administrative Assistant from her initial hiring on July 12, 2021 until her termination effective January 5, 2022.

95. Plaintiff was classified as "exempt" from overtime pay, when her job duties primarily comprised of scheduling appointments, editing and proofreading correspondence, preparing and distributing agendas, and answering the telephone.

96. Plaintiff did not consistently exercise discretion and judgment.

97. Plaintiff did not formulate or implement management policies.

98. Plaintiff did not have authority to deviate from established policies.

99. Plaintiff did not handle any complaints or arbitrate disputes.

100. Plaintiff was misclassified as "exempt" from overtime pay in violation of the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 207(a)(1).

101. Defendant's actions were intentional and willful.

102. Plaintiff is owed all unpaid overtime in exact amounts to be determined from July 12, 2021 until her termination effective January 5, 2022.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Attorneys' fees and costs; and

e. Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated: June 27, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEYLON DUDLEY,

        Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN FOUNDATION,

        Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

Plaintiff, Seylon Dudley, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                    Respectfully Submitted,
                    HURWITZ LAW PLLC

                    */s/ Noah S. Hurwitz*
                    Noah S. Hurwitz (P74063)
                    *Attorney for Plaintiff*

Dated: June 27, 2022